Court is again in session. Please be seated. Things appear to be going well this morning. Thanks to Ms. Tisa and Mr. Nelson, and I see Mr. Brenes, Jonathan Brenes, in the back of the courtroom. So our arguments are being recorded. Thanks to Mr. Brenes. We have one more argument this morning. And this is Alan Dershowitz v. Cable News Network. John Williams is here from McCullough & Dershowitz. Catherine Bolton is here from Cable News Network. And Mr. Williams, you may begin your argument. Thank you. And that concludes the court. I'd like to make three points today. Point number one is that the district court erred by failing to consider in its actual analysis that the CNN broadcasters intentionally omitted material and contrary facts. This intentional omission issue was a significant one below. It was the subject of extensive oral argument, both in the papers and during the oral argument. And the court does not mention it in its decision. Point two. Under the Supreme Court's decisions in St. Louis v. Thompson at Lipp Anderson v. Liberty Lobby, the court erred in placing far too much weight on the self-survey state-of-mind testimony of the CNN. And the third point. For these reasons, coupled with the court's conclusion that CNN engaged in foolish and apathetic journalism, the affirmance of this case would result in an unwarranted extension of the New York Times v. Sullivan document, and would make it impossible for the court to overturn the New York Times v. Sullivan. I know you don't have the ability to do that. But what I am saying is that the way the court construed the evidence on this day-note review in failing to consider the significant omissions What omissions? The omission was that Alan Dershowitz came in and two days before on January 27th in front of the Senate made a clear and impassioned statement that a crime was necessary to impeach a president. And he said it over and over. Bribery, treason, and high crimes and misdemeanor. It could not have been clearer. That was on January 27th. But let's say in a different case, let's say that the speaker made that statement, right? And then two days later said, I changed my mind. No crime need be committed. Would it be inaccurate to report the second statement? No, it would not. So what's different here? Because he did not come in and say I had changed my mind. Is the party obligated to always give the complete context of the statement? No. Not under New York Times v. Sullivan. I've looked at all the evidence in terms of the audio and the videos and when I watched the CNN's anchors, I mean, they didn't say what Professor Dershowitz said. They, quote, I can do anything I want to get elected. Dershowitz argues new standard for presidential power. I mean, they were very clear. If a president is running and he thinks it's in the public interest he can do anything, anything. I mean, that's what was said repeatedly at the 6 a.m. newscast, the 7 a.m. newscast, Anderson Cooper, Aaron Burnett at Trump. I mean, there was always an indication that what Professor Dershowitz was saying was that in order for it to be an impeachable offense, I mean, I guess it could be anything because that was what they were arguing, that the president could do anything as long as the president thought it was in the best interest for the country i.e. him getting elected. And he didn't say that? He didn't say that. Now, from my perspective, and I'm going to speak for myself, I think Professor Dershowitz was defamed. The problem I have with Sullivan is actual malice. Well, you shouldn't have that problem because what Sullivan did was to say that you need to show reckless disregard of the truth. And then the Supreme Court has gone on beyond that, and it went on beyond that in saying that if there are obvious reasons to doubt the truth, then that can show actual malice. And that was the St. Amant case. St. Amant was very clear. You cannot come in and testify that you believe what you said was true. That does not guarantee you a verdict. Where's the evidence of actual malice? The evidence of malice is twofold. Number one, well, we argue a number of things, but today I'm just going to mention two points. Number one is the intentional omission of exculpatory facts. They knew that Alan Dershowitz had not said that the president can do whatever he wants. They knew that Alan Dershowitz had not said that How did they know that? He said they knew that. How did they know that? Well, let me cite Paul Vigala's testimony, who wrote this essay entitled The Dershowitz Doctrine, ridiculing Alan Dershowitz for making this statement. Paul Vigala was asked in his deposition, look at what you've said. Is this a fair, accurate description of what Alan Dershowitz said? And he said no. His quote was, Dershowitz didn't say anything like that. And then he also admitted in his deposition, quote, that he understood Dershowitz. And so that's your evidence of actual malice? Yes. The evidence of actual malice is a number of things. But certainly, when you admit that you have stated falsely, that is evidence of actual malice. Actual malice can be either a knowing falsity, which you have here, or a... That's one of the elements under Florida law. I mean, we're applying Florida law. This is definitely stated under Florida law, right? It's got to be a false statement. It's clearly a false statement. There is no... I'm sorry, sir. There is different elements of actual malice under Florida law. A false statement that you knew was false, and so you're giving us evidence that it was a false statement that you knew was false. And the third is the actual malice. Well, you say Florida law. The actual malice standard... Does Florida law apply in this case? Florida defamation law? Yes, it does. I mean, defamation is a court, and state court law applies in defamation cases. However, what we have here is the Supreme Court federal overlay, the First Amendment. And so while you apply Florida law to many issues, right now we've been bound by federal law and the Supreme Court's decision in... And I say not just determining whether there's actual malice, how do we factor into our analysis identical sentiments expressed by all the other news outlets, the New York Times, the Washington Post? It seems to support the argument that this is just newsworthy commentary. This wasn't just views by CNN people. It was all the other news outlets. No, Your Honor, it was not. All the others. Well, it was the New York Times and the Washington Post, right? The Washington Post actually, depending on which article you read, the Washington Post and many other publications specifically pointed out that Dershowitz had said that, but that he had also said that a president can be impeached. For example, taking a bribe. They did not go nearly as far as CNN did. Almost nothing. The problem I'm having is that I think the statements are somewhat confusing. I think there are probably many ways to read his statements, and your reading of those statements might depend on what you think of him generally beforehand, or the job that he was working for beforehand. So why can't these be just a large set of statements that readers can understand many different ways depending on the perspectives that they're coming in with? Well, that is anyway CNN's argument under Page versus Time, where they're saying that if it is an ambiguous statement, then a person has to give his own rational interpretation. And they make that argument. The court did not actually address that, but let me address it. Because to be a rational interpretation of an ambiguous statement, number one, you must have an ambiguous statement. And here, not one of the commentators said it was ambiguous. In fact, Berman, who was the last of these, so you don't have ambiguity. Number two. Well, is ambiguity defined objectively or subjectively in this context? Ambiguity? No, I would say it's objective. So does it matter whether one or more of the speakers found it ambiguous? If it could be ambiguous? If they did find it ambiguous, yes, but none of them testified that it was ambiguous. They said that, excuse me, none of them said on their broadcast that it was ambiguous, and Berman said it's not ambiguous. But secondly, even if it was ambiguous, the interpretation must be a rational interpretation. And you saw what the court said, and here we agree with this. Dershowitz never said anything like that. The court looked at this and said that it's foolish, that it's apathetic. I'm sorry, Time? You can keep going. The court said it's foolish, it's apathetic. It was not a rational interpretation. They said here you have these supposed experts in the law unable to string together some basic legal principles. And the third thing I will note, and I will sit down, is that that's a jury issue. The cases are very clear. The Nader case out of D.C., the highest court, the Roboso case, the Fifth Circuit, whether it is a rational interpretation of an ambiguous statement, the issues of ambiguity and rationality are questions for the jury. Before you sit down, if I could just return to the elements of defamation under Florida law. One of those elements, you have to demonstrate that he has actual damages. Correct. And so, I'm looking in the record, and he didn't identify a single person who says their opinion of Dershowitz changed as a result of the CNN statements. I can't find any proof that anybody's opinion of Dershowitz changed as a result of the statements that he made in response to Senator Cruz's question during the impeachment proceedings. You're right. You do not have to bring in people who said that my opinion of Alan Dershowitz changed. Well, if that's the case, then where is the evidence? You show it by circumstantial evidence. Well, where is the circumstantial evidence? The circumstantial evidence, as we argued extensively before this report, is that prior to... Who you filed an affidavit with, Mr. Dershowitz? Excuse me? Professor Dershowitz filed an affidavit discussing the damages that he suffered. That's right. I mean, not only do you have emotional damage, which is not even discussed here, which often is sufficient, which always is sufficient, to make your damage claim. You have the reputational injury here, too. They were the only ones who claimed... There has to be a damage to his reputation, though. Pardon me? There has to be a damage to his reputation. By someone in the public. He didn't have to show that my reputation has been damaged in the public? Yes, he does. Well, first of all, let me say this. Did someone else's opinion of him change as a result of these statements? He didn't have to show that? Well, you've asked three questions, and I'll be answering each one of them. Number one, because the Supreme Court has recognized in Herbert D. Lando that it is very difficult for a public figure to show actual damages. We have the issue of presumed damages. If it is per se, which is his here... Well, it's a difficult standard under New York Times versus Sullivan. It's a difficult standard to me. Well, the New York Times-Sullivan standard just addresses the issue of balance. It does not talk about damages. That is in all cases. You have presumed damages, Your Honor. You certainly have that. You have circumstantial evidence. You never get a situation in a defamation case, and I've done a few, where somebody has come to me and said, my opinion of so-and-so has changed. So your answer to my question is evidence of actual damage is based on his affidavit that I feel like my reputation was damaged as a result of the mischaracterization of the statements. No, it's not just that. It is the empirical proof we put in that prior to the articulation by CNN of this Dershowitz doctrine that he was asked to appear on a number of different television stations and after this is not. He has essentially been blackballed based upon this craziness I thought he was invited back twice by CNN. He was, to explain that. But in the aftermath of this, he's not being invited back by anybody other than Fox News and Newsmax. That is all in the affidavit. He wasn't invited back twice and appeared. Yes. In the wake of that, he was asked back, or he asked to come back and he spoke and he said, I never said anything like that. But damages may be shown by what happens later. We're not saying that, you know, damages are focused at any one point in time. Damages must be looked at as a whole. Don't those invitations by CNN, as well as the fact that they played the full hearing later indicate, is that evidence that there was not actual malice? I would think that if an organization had actual malice, they would not do anything in the near term before any litigation was filed or anything like that to give the entire context of the person's comments. Well, two things here. Post-op rationalizations. I'm not saying post-op rationalizations. I'm asking what inferences we can make from their relatively immediate efforts to give the full context of the statements. And I would agree with you. Asking him back is an issue that does go to mouse, that you can look at that. But you also must look at the exculpatory evidence that they failed to come up with. And I ask you to look at the Schiavone case out of the Third Circuit, which is directly on point. Your own decision in the NYT case and Hart-Hanks. Hart-Hanks was a Supreme Court case. Hart-Hanks versus Condon. And in that case, the Supreme Court found actual malice. Why did they find actual malice? Because the newspaper there failed to interview a key witness who, in their view, if they had interviewed her, would have, quote, put an end to the story. It was this failure to look at and come forward with evidence they knew was exculpatory. That is what you must look at here. You may look at the fact that they invited him back. Yes, it goes to the actual malice determination. But all we have to do is raise an issue that goes to the jury. This is a jury issue, whether there is actual malice. And in this case, the judge completely failed to look at any of this evidence we were citing to him and failed to look at any of the other cases, Schiavone, Hart-Hanks, that would clearly show that if you had an intentional omission, it was evidence of malice. Once it's evidence of malice, that kicks in the right to have a jury trial. But what the judge said is, look at look here at what they said. They were deposed, and every one of them, perhaps save for McGowan, who admitted it was wrong, every other one of them said, oh yes, I believe what I said. I believe what I said. I would say it again. And the judge said, well, because they had essentially said that they believe what they said, I'm not going to go any further. And the point is, the judge should have gone further. Because it is clear out of St. Amant, it is clear out of Anderson v. Liberty Lobby, that those issues are issues for the jury. And St. Amant itself, which came down right after the Supreme Court decision in New York Times v. Sullivan, St. Amant said, oh, okay, we know what we said in New York Times v. Sullivan. We know we've said that you have to have clear and convincing evidence. But it also said, you're not going to be able to guarantee yourself a verdict. You, the defendant, you're not going to be able to guarantee yourself a verdict. Simply by saying you believed it. We have to look at circumstantial evidence and we have to see if there were obvious reasons to doubt. I'm sorry I'm getting over it. Thank you. Thank you. And we'll hear from Ms. Bolger. Good morning, Your Honor. My name is Katherine Bolger on behalf of CNN. The speech at issue in this case is important. It's about the words Professor Dershowitz said on the floor of the United States that in advocating for the President of the United States, that this is about as straightforward a libel case as you can get. And the decision below should be affirmed on three independent grounds. There's the plaintiff has utterly failed to carry his burden of establishing evidence that would allow a jury to conclude by clear and convincing evidence that there's factual malice. The statements are statements of opinion and the plaintiff will never be able to show, as he's required to do under Florida law, that the statements are the proximate cause of his damages because he in court litigations, he said that his damages were caused by those acts, not this act. But I'll start with actual malice. And I think it's very important to remember what the standard here for actual malice is on the summary judgment motion. It is, and this is from Anderson v. Liberty Lobby, which incidentally was decided after Nader and after St. Amant v. Thompson, which Mr. Williams just cited. The standard is that the plaintiff has to show that a reasonable jury finding either that the plaintiff has shown actual malice by clear and convincing evidence or that the plaintiff has not. There must be concrete evidence and conjecture doesn't amount to evidence of actual malice. Well, your counsel says that circumstantial evidence is sufficient. Circumstantial evidence is sufficient, but it still must meet the clear and convincing threshold. And there's actually a great decision out of the D.C. Circuit which talks about what circumstantial evidence can look like. It's the Tah case. And in that case, they said circumstantial evidence could be evidence that there was a fabrication, that there evidence that the statements are so inherently improbable that only a reckless person would put them into circulation. Recklessness, of course, defined here as subjective awareness of probable falsity, because that's what reckless means in the actual malice context. And the third one was based wholly on a source the appellees had obvious reason to doubt. So if we look at some of the statements that were made, this is from the 6 a.m. newscast by one of the anchors, saying that Dershowitz said, quote, I can do anything I want to get elected, speaking for the president, for, quote, if a president is running and he thinks it is in the public interest, he can do anything, anything. Professor Dershowitz did not say that on the Senate floor. Well, Your Honor, I know that you believe that. I know Judge Singhal believes that. And I know Mr. Dershowitz believes that. All of that matters in this case. That's my question. Did he say that the statement I just read, quote, if a president is running and he thinks it's in the public interest, he can do anything, anything. Did Professor Dershowitz say that on the Senate floor? No, but Mr. Berman was in that segment, he was talking about a quote Mr. Dershowitz did say on the Senate floor. And this is what he said. He said, a complex middle case is, I want to be elected. I think I am a great president. I think I am the greatest president there ever was. And if I'm not elected, the national interest will suffer greatly. That cannot be an impeachable offense. And what Mr. Berman was saying, and by the way, just so you know, it wasn't that CNN played the impeachment at a later time. All three of our... I understand this was during the, they actually were playing the impeachment proceedings. During the time, right. So Mr. Berman is... The anchor, I don't know who the female anchor was, quote, Dershowitz is arguing for unrestrained, unchecked presidential power, which was said to have been made by the political analyst John Adler, in addition to Watergate would not be prosecuted. None of these statements were made by Professor Dershowitz, and neither did he imply that, because clearly he suggested, and he articulated on the Senate floor, that if you commit a crime, that was an impeachable offense. Well, the testimony of the witnesses was that they did not understand Mr. Dershowitz to be making the argument you need. And the specific argument that they made, the specific testimony was twofold. The first is they said that the illegal coal line, which is what Mr. Dershowitz says, but by the way, in front of your honors, only paraphrases, never quotes. There's never quotes from the speech. The only one who quotes from the speech is us. That the illegal coal line didn't modify the rest of the agreement. Anderson Cooper said if he wanted to qualify at all with that sentence, he would have put them together. All of the testimony from the speakers of the words on CNN was that they did not, they understood Mr. Dershowitz to say exactly what they talked about when they went on the air. They're not purporting to quote him. They're talking about it. And they all testified they believed it was true when they said it, and they believe it's true now. They also all testified that he thought it was a new argument. That January 29th was the first time he made this argument. And there are scores of news organizations that made exactly the same point, and those are in our briefs. I would also add that 200 legal scholars wrote to Congress and said, please do not accept Mr. Dershowitz's understanding of presidential power. It is too big. So the idea, everybody was talking about this. This is a real time happening. And all of the CNN witnesses testified they believed it was true. I do want to briefly address the Mr. Begala testimony because the plaintiff is grossly misquoting what Mr. Begala said. First of all, remember Mr. Begala's opinion column was an opinion column. It was not reporting the news. It was marked as an opinion column. And the quote that the plaintiff... It was an opinion column under the line political contributor opinion column. The views expressed herein are Mr. Begala's own. It was on the CNN website, certainly. And when Mr. Begala was asked about what he said, he said when he was asked... Yes, I can. It's 287.1 at 108.7-23 He was specifically asked, do you believe at the time he wrote the column that that was an accurate, fair, and faithful characterization of Mr. Dershowitz's statements? And he responded, no, I wasn't trying to. I wasn't saying this is what he said. I was saying this is what I thought it would do. This is what others will do with that. I'm not quoting Professor Dershowitz. He didn't say anything like that. But what I'm saying is the argument he laid out will be abused to justify all manner of things by politicians seeking a re-election. I don't say Dershowitz says this. I say this is a doctrine that would do this. I think that's an important distinction. Mr. Begala also testified repeatedly, not only that he believed what he said was true, but over and over again, because he believed what Mr. Dershowitz was arguing set off alarm bells for our democracy. And that, I think, makes two points, and why I think, Judge Grant, your question about the ambiguity or lack of ambiguity of what Mr. Dershowitz said is important. It's possible that you all disagree with what CNN said, and they misunderstood Mr. Dershowitz. But that would only go to falsity. Maybe they got it wrong. That would never amount to actual malice. And the reason it wouldn't amount to actual malice is because they didn't believe they got it wrong. And I think the ambiguity point is really important here. The point is, this was an enormously public event, and they were receiving the information in real time, and commenting on what was happening in their nation. They believed it was truthful. It is not like Skavone, which I always say shy-a-bone, and I don't know which one is right. It's not like Skavone, and it's not like Mason, and it's not like Hart-Hence. In all of those cases, the plaintiff had a fact, a piece of evidence sorry, the reporter had a fact, a piece of evidence, a thing they had that they either didn't run down, or they disbelieved. In Mason, Janet Malcolm had tapes she refused to listen to, and instead made up quotes in an article. In Hart-Hence, it wasn't just one witness, it was five witnesses and a tape recording that the journalist chose not to listen to. In Skavone, there was a document that actually disproved the allegedly defamatory statement, and the reporter testified, oh yeah, I knew it disproved the defamatory statement, I just didn't believe it. Here, what we have are reporter after reporter after reporter. It's editor after editor after editor saying, I saw nothing that made me disbelieve what I said was true, and what I said was true. In other cases, recent cases related to defamation, related to news reports, you'll see contemporary comments in email and text and things between speakers and other people, indicating that they're aware that what they're saying is false. Is there any evidence of that in this case? Actually, to the contrary, there's actually contemporaneous evidence that establishes that the speakers believed it was true. So in the case of Joe Lockhart, Joe Lockhart was sitting at home when Mr. Dershowitz gave his comments on the floor of the Senate, and he was tweeting out on the 29th. He was sitting at home when Mr. Dershowitz was speaking, and he was tweeting out tweets long before anybody contacted him from CNN in which he expressed views consistent with what he later said on CNN. In the case of Paul Begala, Paul Begala was watching CNN Live on an airplane, and he saw Dershowitz give these arguments, and he tweeted from the airplane that Dershowitz was making an argument akin to what Nixon was arguing. In addition, there's emails from John Berman saying that Dershowitz is making this incredibly broad rant of power, and in addition, even Brett Harman, who cut the clip, has a whole discussion about why he thinks this is newsworthy. Chuck Haddad, who cut the clip for the Anderson Cooper show, also sent an email saying, we're going to move this up in the show because it's blowing up the Internet right now. There is a wealth of contemporaneous evidence that everybody who ultimately said what they said on CNN believed it long before there was any contact with CNN. So far from being any contrary evidence, there's actually only evidence that supports the good faith of the speakers here. Now, potentially, I think it's a problem not only for this court, but I still suspect that it's likely that commentators at certain places came to certain conclusions about these remarks based on their views about things going on. Commentators at other places probably came to very different conclusions about what these remarks meant or were trying to do based on their preconceptions going in. Now, that is perhaps a very serious problem, but it's not one that indicates actual malice, is it? Well, no, it's not. People get to disagree about what our leaders say about our country. Remember, this is—we've forgotten, because 2020 got a little more bimby after this, but in January of 2020, this was the biggest news story and it was what we were all talking about. Of course people disagree across the political spectrum, but I will add one thing, Your Honor. The plaintiffs have only identified one newspaper article that actually disagreed with CNN's reporting other than Mr. Dershowitz's own commentary, and that was a Wall Street Journal article. Otherwise, they have not identified any specific publication that disagreed with CNN's reporting, which actually brings me to a brief discussion of opinion, which we haven't talked about. And I think this is actually a very easy opinion case under Florida law. Florida law's opinion doctrine is more broadly protective of speech than the federal government is, and there's two ways in which we know these statements were opinion. The first is they held themselves out as opinion. Now, that's not the be-all and the end-all, but the Supreme Court in Milkovich and the Florida courts in the Fortson case said that if a statement holds itself out as one of opinion rather than one of fact, then you should take that into account, because it would not be actionable. Could you say, though, my opinion is that Bob killed Sally and have that not be actionable? I'm not sure if it goes quite that far. Under Florida law, you could say my opinion is that Bob killed Sally for the following six truthful reasons, which is the other half of the opinion analysis. Right? So it's not just that the language is loose and rhetorical. Even Judge Sincoll acknowledged that Joe Lockhart's statements were clearly statements of opinion in the oral argument below. But how do you have opinion statements? I understand opinion statements at maybe an Aaron Burdette show or Anderson Cooper or 360, but how do you have opinion statements on the 6 a.m. and the 7 a.m. news broadcasts? Because those are news broadcasts. Those are not opinion shows. Well, right, and opinion doesn't have to be—the law is that opinion isn't counted in either direction, right? It isn't necessarily opinion if it's not opinion if it's not marked as opinion. And in this case, under the Florida doctrine of pure opinion, you can have an opinion that you express when there are disclosed facts, right? And that's why I think the context here is so important. These statements are literally being made on the first day, the first two sentences, in breaks in the show, in the impeachment proceedings. It's not like they were played separately. The impeachment proceedings were going on, and then Joe Lockhart spoke— I think the 6 a.m. and the 7 a.m., there were no impeachment proceedings. They were just giving news commentary. They were giving news commentary about the news. Yes, the impeachment proceedings ended at 11 o'clock at night, and it was at 6 o'clock in the morning. And that's why, of course, on Mr. Berman's show, he showed two separate clips of what happened in the impeachment proceeding, not how it went. And I guess he just broke out as the statement said, because I think he was on the phone. He allegedly found it for a statement for me that it's 6-17, and I guess there's a claim on for both of those blocks. So, to me, there's no question that this is an opinion because the facts, what Mr. Dershowitz said, were clearly disclosed by CNN to the public. There's no question about that. Also, I did want to make the point that Mr. Williams said—may I finish? You may. That the court didn't address the omission of the illegal coal line in his decision. That's just wrong. It's at page 2—it's in page 290, page 13 through 14, is when he addresses that. And if I have one second on damages, then I'll stop. There's a particular Florida law, and it's unique, and I also handle defamation cases, and it's unique to Florida that damages are not presumed in a defamation case against an immediate defendant. The immediate defendant, the plaintiff actually has to come forward with affirmative evidence, and that can't happen here. And the reason that can't happen here is because in January of 2022, while this case was proceeding, Mr. Dershowitz testified in the Virginia Guthrie proceedings that she ruined his reputation, and he didn't testify equitably. He testified that her allegations destroyed his public life, reputation, legacy that destroyed his happiness, his health, his reputation, his career as a public speaker. It affected his writing, his book sales, the readership of his books, and he didn't think any part of his life was affected. During the pendency of this litigation, he said that about something else. In addition, he gave a speech— What case in Florida do you have that stands for that proposition? Corsi v. Newsmax Median. And do you have a site? Yes, it's 519 F. Stuff 3rd, 1111, 1110. It's a Southern District of Florida case from 2021 that cites to a Florida Court of Appeals case. And, yes, Mr. Dershowitz also said that his reputation was, over the past several years, destroyed by three events. I defended President Trump against what I believe was an unconstitutional impeachment. I defended Jeffrey Epstein and helped him get a favorable plea bargain. And I was falsely accused of having sex with a woman connected to Epstein who I never met. These are the only three events that would possibly explain my cancellation. Let me also mention his reputation of O.J. Simpson. What does that mean? Mr. Dershowitz has said a lot of things about his reputation over his years. He did say that, he just didn't say that during the pendency of this litigation, so I was trying to confine myself to the things he said here. If you have no further questions, I'll sit. Thank you. Counsel? Mr. Roy, would you like to reserve some time for rebuttal? Yes, I do. Thank you. So, very quickly, this issue of damages where he said my reputation was destroyed, that was based on the allegations made in the Epstein case, or one of the Epstein cases, by a woman named Virginia Guilfrey who, during the course of the litigation below, then withdrew her allegations, number one. But the allegations were still out there, right? So even if they were completely false, then they still, he still asserted that that was his reputation, right? It's a factual issue. He didn't, certainly a lot of people don't feel that when somebody recants their testimony, that information is still out there for the public to consider. No, I agree. I mean, that's what I'm saying. Yeah. It's a factual issue. It's a factual issue that must be submitted to the jury. The second point is this thing There has to be an issue of fact, though, right? Excuse me? There has to be a genuine issue of fact. It is. About whether or not it's... Damages is clearly an issue of fact. Damages is clearly an issue that goes to the jury. The second point they were making was this thing about Paul Begala putting his article in an opinion column. 1990, the Supreme Court dealt with that precisely in the Milkevich decision and it's Milkevich v. Lorraine Journal. It says it doesn't matter if it's in an opinion if you are asserting verifiable facts and those facts can be determined or not determined, then it is not an opinion. And here, they were asserting verifiable facts which was, Dershowitz said this, which were untrue. That is a verifiable fact and under Milkevich, this is not an opinion. Your Honor has raised the issue about or maybe Ms. Bolger said, only one publication disagreed with CNN. Well, that's not the issue. It's not the issue that only one came out and said CNN was wrong. The issue here is on other publications is that they did not go nearly as far as CNN did. They were much more circumspect and they reported the facts accurately that he had said that you could be impeached for taking a bribe or engaging in an illegal quid pro quo. Nobody went on to say, or very few people went on to say, he can do whatever he wants. A president can do whatever he wants or as Dershowitz started. The last point I wanted to make is to ask you to consider what affirmance of this case below would do. Here, the court not only condoned admittedly false statements, but it condoned this, what he called foolish and apathetic journalism and it did so in the context of sophisticated journalists and lawyer commentators who it said were unable to string together a simple set of legal principles. CNN knew that Dershowitz never claimed that there is a license to commit crimes and they fly in the face of what he consistently said, which was you look at the Constitution. High crimes, misdemeanors, bribery, and treason. Now, CNN defends this on the basis that they remind us of what the Supreme Court said in St. Imani and what it said in St. Imani was that it puts a premium, they say this in their briefs and St. Imani says this. The New York Times told them it puts a premium on ignorance and rewards the irresponsible publisher and that is what St. Imani said. But look at St. Imani. St. Imani dealt with a situation in which there was no evidence, zero evidence of any awareness of probable falsity. That's what it said. Quote page 733, nothing referred to by the Louisiana courts indicates an awareness of probable falsity. But here we have a situation in which commentators deliberately omitted contrary information that would have put an end to the story. And we have a situation in which Pagala... Wouldn't it have put an end to the story? Because as we've said, all of this has been fully aired at this point and at least these people say that's still what they think. Now, whether that's right or wrong is not the question, but No, no, I understand. I understand. No, it wouldn't have put an end to the story. We have a 24-7 news cycle. The story would have gone on. What I am saying is if they had not selectively determined what they were going to report, had not ignored the fact that Dershowitz was saying throughout that there a crime was sufficient for for impeachment, then they would not certainly have gone with that part of the story. Pagala clearly said he understood what Dershowitz was saying and the court chose not to take any of those facts into consideration because it accepted the statements of all the independent commentators uniform that they believed what they said. That's a jury issue. Under Liberty Lobby it clearly states that those credibility determinations should be made by a jury. Were this decision to stand it will be used in the future to justify admittedly false statements by sloppy journalists simply because they were able to come up with some sort of post-doc rationalization as to what they meant and we believe it to be true. This would be an extension of New York Times and I am done and I just want to say this would make it virtually impossible for any public figure when you combine the sloppiness that he found with the other factors, I think it would be impossible. Thank you. Thank you very much. I appreciate your time and letting me run over. Thank you.